

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| FARMER'S ALLIANCE MUTUAL INSURANCE COMPANY, | WD78834 |
| Appellant, | OPINION FILED: |
| v. | August 9, 2016 |
| DANIELS PLUMBING, ET AL., | |
| Respondents. | |

### Appeal from the Circuit Court of Henry County, Missouri
### The Honorable Wayne Patrick Strothmann, Judge

### Before Division Three:
### Victor C. Howard, P.J., Lisa White Hardwick, and James Edward Welsh, JJ.

Farmer's Alliance Mutual Insurance Company ("Farmer's") appeals the circuit court's summary judgment in favor of Daniels Plumbing[1] based on the ten-year statute of repose contained in section 516.097, RSMo.[2] We affirm.

## Background

This lawsuit arose from a propane gas explosion at the Bates County residence of William and Marlene Cole on August 21, 2010. As a result of the explosion, the Coles'

---

[1]The record indicates that the defendant's correct name is DD&G Building, Inc., d/b/a Daniels Plumbing. We refer to the defendant as "Daniels Plumbing" or "Daniels" for the sake of brevity.

[2]Statutory references are to the Revised Statutes of Missouri, as updated by the 2013 Cum. Supp.

residence was destroyed and Mrs. Cole was killed. At the time of the explosion, the Coles' home and personal property were insured by Farmer's.

When the Coles constructed their residence in 1986, they entered into a verbal contract with Ross Daniel for his company, Daniels Plumbing, to "plumb the house." They agreed that Daniels would complete all of the exterior and interior plumbing on the structure, including designing and constructing the necessary gas supply lines to the house. The job was completed in 1986, and Daniels did not do any work at the Coles' residence after that date.

An investigation into the cause of the explosion indicated that a joint in the gas supply line buried near the house had cracked and allowed gas to escape and seep into the Coles' basement. The gas was ignited either by the hot water heater or furnace. Following the investigation, Farmer's paid Cole $375,580 for the property damage to his home, and Cole executed a full assignment to Farmer's of all his rights related to the property damage.

Farmer's filed its first petition against Daniels in 2011 for breach of contract and in tort but later dismissed the petition. Farmer's filed this lawsuit on November 15, 2013, asserting claims of negligence, negligent failure to warn, negligence *per se*, *res ipsa loquitur*,[3] and breach of implied warranty, and seeking punitive damages.[4] Farmer's alleged that the explosion was caused by Daniels' faulty installation of the gas supply line.

Daniels moved for summary judgment on several grounds, including the affirmative defense of the ten-year statute of repose in section 516.097,[5] which bars actions against

---

[3]Farmer's later dismissed its *res ipsa loquitor* claim.

[4]We do not address the propriety of an "assignment" of a claim for punitive damages.

[5]Section 516.097 is a "statute of repose" as opposed to a statute of limitation. "A statute of limitation precludes suit after the passage of a legislatively imposed number of years following the accrual of a cause of action, while a statute of repose bars suit for a specified number of years after the occurrence of a particular event [in this instance, the completion of the improvement] without regard to the date of . . . accrual[.]" *Magee v. Blue Ridge Prof. Bldg. Co., Inc.,* 821 S.W.2d 839, 845 n.3 (Mo. banc 1991).

2

architects, designers, and builders of defective improvements to real property brought more than ten years after completion of the improvement. Daniels claimed that section 516.097 precludes any action against it arising out of the 1986 construction of the gas supply line.

The circuit court heard oral arguments, and, after considering the parties' motions and additional briefing, the court concluded that "there are no genuine issues of material fact, and Daniels is entitled to judgment as a matter of law based upon the ten-year statute of repose, § 516.097[.]" The judgment stated:

> Section 516.097 extinguished any and all claims against [Daniels] in 1996 -- ten years after completion of the gas supply line. Accordingly, [Farmer's] action filed after the 2010 explosion is time-barred and defendant's request for summary judgment must be sustained.

Farmer's appeals.

## Standard of Review

When considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). Because the circuit court's judgment is based on the record submitted and the law, we need not defer to the circuit court's order granting summary judgment. *Id.* Rather, because "[t]he propriety of summary judgment is purely an issue of law," we review the grant of a summary judgment *de novo. Id.* "The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* Thus, we will affirm a summary judgment where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 377, 380. A defending party is entitled to summary judgment if it establishes all the elements of an affirmative defense. *Id.* at 381.

3

**Point I**

Farmer's first contends that the circuit court erred in granting Daniels' motion for summary judgment based on section 516.097 because "performing or furnishing the design, planning or construction" of the gas supply line is *not* Daniels' "sole connection" to the improvement, in that Daniels also had entered into a contract with the Coles. The gist of Farmer's argument, as we understand it, is that section 516.097 contains a "sole connection exception" that prevents its application in a case where the defendant not only performed the improvements on the real property but also had entered into a contract with the owners to do so.

We find nothing within section 516.097 or the case law that supports this argument. Our primary role in construing a statute "is to ascertain the intent of the legislature from the language used." *Magee v. Blue Ridge Prof. Bldg. Co., Inc.,* 821 S.W.2d 839, 843 (Mo. banc 1991). Thus, we look to the language used in section 516.097, which states, in relevant part:

> 1. Any action to recover damages for economic loss, personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which such improvement is completed.
>
> 2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.
> . . . .
>
> 4. This section shall not apply:
>> . . . .
>>
>> (2) If a person conceals any defect or deficiency in the design, planning or construction . . . in an improvement for real property, if the defect or deficiency so concealed directly results in the defective or unsafe condition for which the action is brought;
>> . . . .

4

Pursuant to the plain language of section 516.097, a defendant raising a statute-of-repose defense must establish the following elements: (1) the alleged defect or unsafe condition involves an improvement to real property; (2) the defendant's "sole connection" to the improvement was its design, planning, or construction; (3) the improvement was completed more than ten years before commencement of the action; and (4) the alleged defect or unsafe condition was not concealed. *See Fueston v. Burns & McDonnell Eng'g Co., Inc.*, 877 S.W.2d 631, 638 (Mo. App. 1994) (citing § 516.097).

Here, the parties agree that Daniels designed, planned, and constructed the improvement to the Coles' real property in 1986; that the alleged unsafe condition or defect in the improvement was not concealed;[6] and that the 2010 explosion occurred and resulting claim arose more than ten years after completion of the improvement. The only issue for the circuit court was whether Daniels' "sole connection" with the improvement was that it "designed, planned, and constructed" the gas supply line. The circuit court concluded that it was.

Farmer's contends that the contract between Daniels and the Coles created an additional "connection" that prevents application of the statute of repose to any of Farmer's claims.[7] Farmer's cites *Magee*, 821 S.W.2d at 843, which states that "sole connection" means a "connection to a defective or unsafe condition of an improvement on real estate giving rise to liability." Farmer's interprets this to mean that, where the damages in a case "give rise to" both

---

[6]"The use of the word 'conceals' in the statute indicates an affirmative act, something actually done directly intended to prevent discovery or to thwart investigation." *Magee*, 821 S.W.2d at 844.

[7]Specifically, Farmer's argues:

Here, it is undisputed that the Coles had a direct contractual relationship with Defendant and that Defendant came onto the property owned by the Coles to do work. As a result of that contractual relationship with the Coles as the owners of the property in question, Defendant has a connection that gives rise to liability other than solely as a designer, planner or provider of construction services. Those bases for liability are breach of implied warranty (Count V of the Petition), and negligent failure to warn (Count II of the Petition). Neither of those claims could exist absent privity of contract between the Coles and Defendant.

5

tort and contract claims, there are two "connections," within the meaning of section 516.097.2, and the "sole connection exception" prohibits application of section 516.097 to *any* claims.

The plain language of the statute fails to support this theory. It is axiomatic that the courts are "obligated to enforce the law as duly enacted by the legislature." *State ex rel. Koster v. Cowin,* 390 S.W.3d 239, 245 (Mo. App. 2013). The plain language of section 516.097.2 requires simply that the defendant's "sole connection with the improvement [was] performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement." § 516.097. In *Lay v. P & G Health Care, Inc.*, after noting that *Magee* "did not specifically define what constitutes a sole connection," we concluded that the plain and ordinary meaning of "sole connection" is the defendant "having only one ***relationship*** with the ***improvement***." 37 S.W.3d 310, 320 (Mo. App. 2000) (emphasis added). Thus, in order "to fall outside of the ambit of the statute," there must be a connection to the allegedly defective improvement in some capacity other than as a designer, builder, or constructor. *Id.* at 320-21 (citing *Magee*, 821 S.W.2d at 844). Farmer's does not persuade us that a contractual ***relationship*** between the ***parties*** constitutes such a "connection."

The applicable case law also fails to support Farmer's interpretation of what constitutes an additional "connection" under the statute. *See, e.g.*, *Lay*, 37 S.W.3d at 321 ("sole connection" requirement was not met and, thus, statute of repose did not apply to elevator company that served a dual role in relation to a defective dumbwaiter, in that it purchased the dumbwaiter from a manufacturer, sold it to the facility owner, and then installed it on-site); and *Thompson v. Higginbotham,* 187 S.W.3d 3 (Mo. App. 2006) (statute of repose did not apply to builder of the defective balcony because the builder also owned, developed, and then sold the apartment building with the faulty balcony). Here, there is no evidence that Daniels sold or distributed

6

prefabricated gas supply lines, as in *Lay*, or that it owned, developed, or sold the property on which the alleged defective or unsafe gas supply line was built, as in *Thompson*.

Farmer's cites a footnote in *O'Reilly v. Dock,* 929 S.W.2d 297 (Mo. App. 1996), to support this argument, but that reliance is misplaced.[8] In *O'Reilly*, the homeowners brought a breach of contract action against their contractor based on leaking windows, water damage, and faulty construction of the crawl space. *Id*. at 298-300. The *O'Reilly* Court held that all damage was "capable of ascertainment" more than five years before filing suit (pursuant to § 516.100), and, thus, all of the claims were barred by section 516.120(1), the five-year statute of limitations applicable to contract actions. *Id*. at 301-02. The footnote on which Farmer's relies states:

> We do not ignore Plaintiffs' contention that § 516.097 is the applicable statute of limitations. . . . We have considered that argument and reject it. Section 516.097.4(1) provides that § 516.097 shall not apply if an action is barred by another provision of law. As the trial judge correctly found, the five-year statute, § 516.120, applies, because Plaintiffs' action was an action upon a contract. Moreover, as our supreme court has explained, § 516.097 is a statute of repose "enacted in response to case decisions . . . that had done away with the necessity of privity between the plaintiff and the architect, engineer or builder." That is not this case. Clearly there was a contract between Plaintiffs and Defendant, and this suit charged Defendant with breaching that contract. Section 516.097 does not apply here.

*Id*. at 302 n.3 (internal citations omitted). We agree with the circuit court's assessment here that Farmer's employs "a strained reading and interpretation" of the footnote and that the statute "is not limited to 'any person who is not in privity of contract with the claimant.'" The *O'Reilly* Court did not address section 516.097.2, much less hold that "privity of contract" creates another "connection" within the meaning of that subsection. Rather, the Court applied section

---

[8]We also reject Farmer's suggestion that its argument is substantiated by the circuit court's failure to apply § 516.097 to bar negligence and breach of contract claims in *Business Men's Assur. Co. of America v. Graham*, 984 S.W.2d 501 (Mo. banc 1999). Not only is this based on pure speculation, but the statute of repose defense would not have been applicable there had it been raised. Under § 516.097.5, "[t]he statute of limitation for buildings completed on August 13, 1976, shall begin to run on August 13, 1976, and shall be for the time period specified in this section." The building in *Graham* was completed in 1963; thus, the period for filing an action would expire on August 13, 1986. *See Graham*, 984 S.W.2d at 502. BMA filed suit on August 12, 1986, one day before the expiration of the effective ten-year statutory period. *Id*. at 505. *Graham* has no bearing on the issues in this appeal.

516.097.4(1), under which the statute of repose does not apply "if an action is barred by another provision of law," and found that the action *was barred* by section 516.120. *Id.*

The essence of Farmer's argument is that, unless Daniels can establish that it "had simply shown up at the worksite as a subcontractor, done its work in a vacuum, and left," section 516.097.2 prevents application of the statute of repose to any of Farmer's claims, "whether based in contract or in tort." As noted by the circuit court, "[t]aken to its extreme, [Farmer's] argument would result in there being no limitation or period of repose for persons providing construction services on improvements if there was a contract between the parties." And it would "provide protection to sub-contractors [with] no direct contractual connection with the owner, while exposing persons who contract directly with the owner to liability for an unlimited period of time." Such an interpretation would completely undermine the statute's objectives. "The purpose of § 516.097 is to protect those providing architectural, engineering and construction services from indeterminate liability." *Magee,* 821 S.W.2d at 843. It "protects those within its ambit 'from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, . . . by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.'" *Id.* (quoting *United States v. Kubrick,* 444 U.S. 111, 117 (1979)). To construe the statute in the manner suggested by Farmer's would defeat the purpose of the statute and lead to an absurd result. Such results are not favored. *See id.* at 844.

In sum, there is no support for Farmer's claim that contractual privity between the contractor and homeowner creates an additional "connection" with the improvement that shields all of Farmer's claims from the statute of repose. Daniels' "sole connection" to the improvement was that it designed and built the gas supply line; thus, the circuit court did not err in entering summary judgment in Daniels' favor based on section 516.097. Point I is denied.

8

**Point II**

Farmer's also contends that the circuit court erred in granting summary judgment for Daniels because section 516.097 applies only to tort actions, and Farmer's "breach of implied warranty" claim is a contract action. In support, Farmer's cites the section heading appended to the statute: "Tort action against architects, engineers or builders of defective improvement to real property must be brought within ten years of completion of improvement, exceptions."

Farmer's ignores the well-established rule that "[t]he bold-faced headings (or 'catch words') assigned to each title, chapter and individual section throughout the Revised Statutes are the work solely of [the] codification process and, therefore, shed no light whatsoever on the General Assembly's purposes or intent." *State v. Wade*, 421 S.W.3d 429, 441 (Mo. banc 2013) (Wilson, J., concurring). These headings "are not to be considered in construing our statutes; these indicia are mere arbitrary designations inserted for convenience of reference by clerks or revisors, who have no legislative authority and are therefore powerless to lessen or expand the letter or meaning of the law." *State ex rel. Agard v. Riederer*, 448 S.W.2d 577, 581 (Mo. banc 1969). Of course, "consideration may be given to the official title of a legislative enactment." *Id*.; *see Bullington v. State,* 459 S.W.2d 334, 341 (Mo. 1970) ("the title of a statute is necessarily a part thereof"). The "title" to which *Bullington* refers is the title required by Article 3, § 23, of the Missouri Constitution, *i.e.*, "the title as enacted by the legislature." 459 S.W.2d at 341. The section heading on which Farmer's relies is not a "title" in this sense; and *neither* the official title of the Act establishing section 516.097, nor that of a 2002 bill amending it, uses the word "tort."[9]

---

[9]In 1976, the Legislature passed House Bill No. 1363 adding section 516.097 as a "new section" to Chapter 516. Its title reads: "AN ACT to amend chapter 516, RSMo, relating to limitations of actions by adding one new section relating to actions arising out of a defective or unsafe condition of any improvement to real property." 1975-76 MO. LAWS 766-67. In 2002, the Legislature amended section 516.097 by passing Senate Bill No. 840. Its title reads: "AN ACT to repeal section 516.097, RSMo, and to enact in lieu thereof one new section relating to statute of repose for certain design professionals." 2002 MO. LAWS 803-04.

9

The language used in the statute also does not refer to "torts." In interpreting a statute, we "ascertain the intent of the legislature from the language used, [and] consider the words in their plain and ordinary meaning." *Gurley v. Mo. Bd. of Private Investigator Exam'rs*, 361 S.W.3d 406, 412 (Mo. banc 2012). The language of section 516.097 is quite clear and direct. It states that "*[a]ny action* to recover damages . . . shall be commenced within ten years of the date on which such improvement is completed." § 516.097.1 (emphasis added). Nothing in any part of section 516.097 indicates that it is limited to "torts." "[W]here statutory language is plain and unambiguous, 'application . . . of the statute, rather than construction, is all that is required.'" *State ex rel. Clark v. Long*, 870 S.W.2d 932, 936 (Mo. App. 1994) (citation omitted). This applies to the plain and unambiguous language of section 516.097.

Based on the foregoing, we conclude that the circuit court did not err in finding that "the statute of repose [in § 516.097] acts to eliminate *all* of [Farmer's] claims, including any claims based in contract." Point II also is denied.

## Conclusion

The circuit court did not err in concluding that Farmer's action against Daniels is time-barred and that Daniels was therefore entitled to summary judgment on ***all*** of Farmer's claims. We affirm the circuit court's judgment.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

10