**Edna HAWKINS, Appellant,**

v.

**Charles Dennis LEMASTERS, et al., Respondents.**

**No. WD 65677.**

Missouri Court of Appeals, Western District.

May 9, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 27, 2006.

Application for Transfer Denied Sept. 26, 2006.

James M. Roberts, Blue Springs, MO, appellant.

Timothy J. Murphy, Kansas City, MO, respondent.

Before JAMES M. SMART, JR., P.J., ROBERT G. ULRICH, and LISA WHITE HARDWICK, JJ.

JAMES M. SMART, JR., Judge.

This is an appeal from the dismissal of a will contest petition for lack of standing. Edna Hawkins appeals the trial court's grant of its own motion to dismiss for lack of standing. Hawkins' main contention is

that the trial court erred in not granting standing based upon a signed copy of a purported will incorporated in her will contest petition. We affirm.

## Procedural and Factual Background

Elsie Lemasters died on March 16, 2002. At the time of her death, Lemasters was a widow. On March 25, 2002, a will, executed by Lemasters on July 13, 2000, and a codicil, executed by Lemasters on February 20, 2001, were presented to the Probate Division of the Circuit Court of Jackson County, Missouri. Both were admitted to probate. Letters Testamentary were issued on April 3, 2002, to Charles Dennis Lemasters (a nephew of Lemasters' late husband) as personal representative under the will dated July 13, 2000.

Appellant Edna Hawkins is a niece of Lemasters' late husband. Respondent Anna Lemasters is the wife of Charles Dennis Lemasters. Respondent Dorothy Keith is a great niece of Lemasters' late husband. None of the parties are blood relatives of Lemasters; therefore, none are heirs at law.

On August 6, 2002, Hawkins filed a "Statement as to Death and Presentment of Instrument in Writing for Probate." The statement said that an instrument purporting to be a will of Mrs. LeMasters, dated May 6, 1996, was attached. The attached document was undated, unsigned, and unwitnessed. In the purported unsigned will, the document named Edna Hawkins a beneficiary and personal representative. Hawkins did not file any other documents to explain why only an unsigned copy was presented. The Probate Division, on August 26, 2002, rejected the purported will because it was not signed.

Shortly thereafter, Hawkins filed a "Petition to Contest Will and to Probate Rejected Will." Respondents filed their answer to the petition on October 3, 2002.

Hawkins filed an "Amended Petition to Contest Will and to Probate Rejected Will" on November 26, 2002. Attached to the amended petition was a document purporting to be a signed copy of the same purported 1996 will which had been presented on August 6, 2002. Someone had written on the will the words "old/superceded" and had drawn a line diagonally through each page. Respondents filed a motion for summary judgment and Hawkins responded. On June 24, 2005, the trial court dismissed the petition on its own motion for lack of standing while considering the motion for summary judgment. The trial court based its decision on the prior ruling rejecting the 1996 purported will. The court noted that under section 474.320 [1] every will must be in writing, signed, and attested by witnesses in the presence of the testator. Because the purported will was presented without the statutory requirements, it was rejected. Accordingly, the court ruled that Appellant Hawkins had no financial interest in the estate that would give her standing. Neither the motion for summary judgment nor the response to the motion are in the legal file.[2]

---

1. All statutory references are to the Revised Statutes of Missouri, 2000, unless otherwise indicated.

2. Apparently there was another will signed by Lemasters on May 12, 2000, that benefited Hawkins (LF 9). That will was included as Appendix A to the "Amended Petition to Contest Will and to Probate Rejected Will" filed on November 26, 2002. Hawkins does not reference that document specifically in the petition (although she does reference Appendix A in paragraph 7, she is actually referring to Appendix B, and in paragraph 8 she refers to Appendix B when she is actually referring to Appendix B–1). Neither party mentions the May 12, 2000, will in the appellate briefs. This document was never presented or an attempt made for it to be presented to the

## Standard of Review

Because there is no dispute as to the basic procedural facts, our review of the legal issues is conducted *de novo*, and issues involving the interpretation of statutory language are questions of law. *Lakin v. Gen. Am. Mut. Holding Co.*, 55 S.W.3d 499, 503 (Mo.App.2001). "In cases involving questions of law, this court reviews the trial court's determination independently, without deference to that court's conclusions." *Id.*

## Analysis

■ Hawkins' only point on appeal is that the trial court erred in dismissing her petition for lack of standing because her will contest petition incorporated a signed copy of the purported 1996 will. She argues that she satisfied the presentment requirement of the statute and provided the necessary financial interest to contest the 2000 will and 2001 codicil. We disagree.

The first document was submitted to the court on August 6, 2002. This version was not signed. Section 474.320 states that "[e]very will shall be in writing, signed by the testator, or by some person, by his direction, in his presence; and shall be attested by two or more competent witnesses subscribing their names to the will in the presence of the testator." Without a signature by the testator or witnesses, the document did not satisfy the mandatory requirements for a valid will, and was rejected by the court. *See Brownfield v. Brownfield*, 249 S.W.2d 389, 391 (Mo.1952).

We first consider whether the document submitted to the court fulfilled the requirements of section 473.050 (governing presentment) in order to be rejected affording standing for a will contest. Section 473.050 states that

1. A will, to be effective as a will, must be presented for and admitted to probate.

2. When used in chapter 472, RSMo, chapter 474, RSMo, chapter 475, RSMo, and this chapter, the term "presented" means:

(1) Either the delivery of a will of a decedent, if such will has not previously been delivered, to the probate division of the circuit court which would be the proper venue for the administration of the estate of such decedent, or the delivery of a *verified statement* to such court, if the will of such decedent is lost, destroyed, suppressed or otherwise not available, *setting forth the reason such will is not available* and setting forth the provisions of such will so far as known; and

(2) One of the following:

(a) An affidavit pursuant to section 473.097, which requests such will be admitted to probate; or

(b) A petition which seeks to have such will admitted to probate; or

(c) An authenticated copy of the order admitting such will to probate in any state, territory or district of the United States, other than this state.

§ 473.050 (emphasis added).

In construing a statute,[3] the court will take words in the ordinary and usual sense

---

probate court. However, in the Supplemental Legal File, the three documents referred to in the petition as Appendixes A, B, and C (the July 13, 2000, will; the February 20, 2001, codicil; and the signed 1996 will) are laid out in that order with the identification referred

to in the petition. The May 12, 2000, will is not included in the Supplemental Legal File.

3. Section 473.050 has previously been construed in *Croom v. Bailey (In re Estate of Croom)*, 107 S.W.3d 457 (Mo.App.2003), but that opinion examined whether as a prerequi-

unless the words are technical and have a peculiar and appropriate meaning in the law. § 1.090. "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *In re Boland,* 155 S.W.3d 65, 67 (Mo. banc 2005) (*citing Landman v. Ice Cream Specialties, Inc.,* 107 S.W.3d 240, 251 (Mo. banc 2003)). "Statutory construction should not be hyper technical but instead should be reasonable, logical, and should give meaning to the statutes." *Id.*

█ Section 473.050 was substantially amended in 1996. 1996 Mo. Laws 857. Prior to this amendment, the statute did not contain a definition for "presentment." [4] *Id.* "When the legislature amends a statute, that amendment is presumed to change the existing law." *Cox v. Dir. of Revenue,* 98 S.W.3d 548, 550 (Mo. banc 2003). In the new section, the addition of the definition for "presentment" changed how the courts had defined the term.

The St. Louis District, now Eastern District, of this court first defined "presentment" as used in section 473.050 in *State ex rel. Shriners' Hospitals v. Hensley,* 385 S.W.2d 820, 825 (Mo.App.1964). In that case, the court stated that something more than merely filing a will is required for presentment. *Id.* at 825–26. This requirement continued through the case law

preceding the amendment in 1996. *See, e.g., Gillman v. Mercantile Trust Co.,* 629 S.W.2d 441, 445 (Mo.App.1981); *In re Estate of Bridges,* 710 S.W.2d 327, 330–31 (Mo.App.1986); *Lopiccolo v. Semar,* 890 S.W.2d 754, 757 (Mo.App.1995).

The amendment of section 473.050 presumes a change from the definition that was previously applied to "presentment." *Cox,* 98 S.W.3d at 550. The new definition provides two means to "present" a will to probate. First, the will can be delivered to the probate division of the circuit court. § 473.050.2(1). This presumes the document delivered is a will satisfying the requirements of section 474.320. Second, if a will is not available, a verified statement stating why the will is not available *and* setting forth the known provisions of the will can be filed. *Id.* Either of these methods for presenting a will must also have either an affidavit requesting probate, a petition seeking to admit to probate, or an authenticated copy of the order admitting the will elsewhere. § 473.050.2(2).

In this case, a statement was not made to the court in August to alert it that a signed original was in existence, or that there had been one in existence but it could not be found. Rather, only the "known provisions" of the purported will were supplied with the unsigned and undated copy. This did not satisfy the requirements of section 473.050.

---

site to presentment the person delivering and/or applying for probate must be either an "interested" or "entitled" party. The opinion does not construe the term "presentment."

4. Prior to the amendment, section 473.050 stated:

No proof shall be taken of any will nor any certificate of probate thereof issued, unless the will has been presented to the judge or clerk of the probate division of the circuit court, within six months from the date of

the first publication of the notice of granting letters testamentary or of administration by the probate division of any circuit court in the state of Missouri, or within thirty days from the commencement of an action under section 473.083 to establish or contest the validity of a will, whichever is later, on the estate of the testator named in the will so presented.

§ 473.050 RSMo 1994.

The second version, purportedly signed by Lemasters and witnesses, was attached to and incorporated into the will contest petition filed on November 26, 2002. However, in order for the court to take proof or issue a certificate for the purported will, the purported will must be *presented* within six months "of the first publication of the notice of granting of letters, or within thirty days after the commencement of an action under section 473.083 to establish or contest the validity of a will of the testator named in such will, whichever later occurs." § 473.050.3(1). The letters testamentary for the 2000 will and 2001 codicil were issued on April 3, 2002. Section 473.033 states that notice should be published as soon as the letters testamentary are issued. Accordingly, it appears that the six-month period for presenting a will to the court would have begun to run in the first week of April, and lapsed in the first week of October.[5] *See Bosworth v. Sewell,* 918 S.W.2d 773, 776 (Mo. banc 1996). Hawkins did, of course, file the purported signed will after filing her own "petition to contest will and to probate rejected will." However, the purported will was not filed within 30 days after the petition was filed because it was not filed until November 26. Thus, however, we look at it, because there was no proper presentment within the time set by section 473.050.3(1), the presentment was not timely. Hawkins' failure to comply with presentment within the period of limitations prevents the court from considering it as either accepted or rejected for the purposes of a will contest.[6] *State ex rel.*

*Estate of Perry ex rel. Perry,* 168 S.W.3d 577, 583 (Mo.App.2005).

Hawkins relies upon *Lopiccolo v. Semar,* 890 S.W.2d 754 (Mo.App.1995), for her point that presenting an unsigned copy of a will still provides standing. In *Lopiccolo,* a 1989 will was admitted to probate and letters testamentary were issued. 890 S.W.2d at 756. Exactly six months later, a 1987 will was presented. *Id.* The court determined that this presentation was timely because it was within the six-month time frame. *Id.* at 757. The court also found that the defendant asserted the validity of the 1987 will in her initial Answer filed prior to the presentation of the 1987 will and then again in the Third–Party Petition filed after the presentation of the 1987 will. *Id.* Those assertions of validity differ from those of the current statute requiring a verified statement as to the reason the will is not available, which Hawkins did not provide with the unsigned 1996 will in this case.

As noted above, the legislature substantially rewrote section 473.050 in 1996, a year after *Lopiccolo.* 1996 Mo. Laws 857. That amendment provided a more detailed definition and process for presenting and admitting a will to probate. *Id.;* § 473.050. Prior to the amendment, for instance, there was no requirement for a verified statement of explanation as to an unavailable will. 1996 Mo. Laws 857.

In *Lopiccolo,* standing was found because the contesting parties stood to either gain or lose under the contested will. *Id.* at 758. Here, due to the lack of proper

---

5. The facts do not provide the date when notice was given, but would have been shortly after the date the letters were issued. If the court erred because the filing was timely, it is appellant's responsibility to demonstrate error. We assume the correctness of the trial court ruling in the absence of information to the contrary.

6. Hawkins relies upon the amended petition filed outside of the six-month window rather than the original petition filed within six months. A copy of the original petition was not provided to this court in the legal file. Therefore, this court can base its decision only on the amended petition filed outside of the six-month period.

presentment of the unsigned 1996 will (without, *inter alia,* a verified statement to accompany it), Hawkins cannot be in a position to lose or gain by contesting the 2000 will and 2001 codicil because she is neither a beneficiary under a presented will, nor an heir at law. *Graham v. Manche,* 974 S.W.2d 580, 584 (Mo.App. 1998) (*citing Lopiccolo,* 890 S.W.2d at 758); *see also Brug v. Mfrs. Bank & Trust Co.,* 461 S.W.2d 269, 276 (Mo. banc 1970). Hawkins failed to demonstrate that she has standing to challenge the 2000 will and 2001 codicil. *Id.* Her point is denied.

### Conclusion

The judgment of the trial court is affirmed.

ULRICH and HARDWICK, JJ., concur.